**UNITED STATES of America**

**v.**

**Juan L. GONZALEZ, a/k/a "Chino", Defendant.**

**No. 99–589–CR.**

United States District Court, S.D. Florida.

Sept. 10, 1999.

Thomas Scott, U.S. Atty., Ann Taylor, Asst. U.S. Atty., Miami, FL, for Plaintiff.

Kathleen Williams, U.S. Public Defender, Miami, FL, for Defendant.

### *ORDER*

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Defendant Juan L. Gonzalez's emergency motion to compel the government to comply with Local Rule 77.2. The Court held a hearing on this matter on September 9, 1999. For the reasons stated below, the Court denies the defendant's emergency motion.

### *PROCEDURAL BACKGROUND*

On August 19, 1999, the grand jury returned an indictment charging Defendant Juan L. Gonzalez with attempted possession of cocaine with intent to distribute it, in violation of Title 21, United States Code, Section 846.[1] The indictment was sealed pending the defendant's arrest. On August 25, 1999, the defendant was arrested and made his initial appearance before Magistrate Judge William C. Turnoff.

On that day, Tom Scott, the United States Attorney for the Southern District of Florida, held a press conference regarding charges brought against a large number of employees at Miami International Airport in connection with a two-year undercover investigation that has been dubbed "Operation Ramp Rat" and "Operation Sky Chef". According to news reports, "Dozens of American Airlines employees and Sky Chef caterers were ar-

---

1. The indictment also includes a forfeiture count.

rested Wednesday [August 25, 1999], charged with smuggling drugs, hand grenades, and guns onto passenger jets as part of a federal sting authorities say reveals 'dangerous and intolerable' security breaches at Miami International Airport." David Kidwell, *Airport Smuggling Ring Busted,* Miami Herald, Aug. 26, 1999, at 1A. Defendant Juan Gonzalez is one of the individuals charged as a result of that investigation.[2]

## DISCUSSION

In his emergency motion, Gonzalez seeks an order compelling the government to comply with Local Rule 77.2.[3] Section A of the rule provides, in pertinent part:

1. It is the duty of the lawyer or law firm not to release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which the lawyer or the firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

2. With respect to a grand jury or other pending investigation of any criminal matter, a lawyer participating in or associated with the investigation shall refrain from making any extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication, that goes beyond the public record or that is not necessary to inform the public that the investigation is underway, to describe the general scope of the investigation, to obtain assistance in the appre-

hension of a suspect, to warn the public of any dangers, or otherwise to aid in the investigation.

3. From the time of arrest, issuance of an arrest warrant, or the filing of a complaint, information, or indictment in any criminal matter until the commencement of trial or disposition without trial, a lawyer or law firm associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication, relating to that matter and concerning:

(a) The prior criminal record (including arrests, indictments, or other charges of crime), or the character or reputation of the accused, except that the lawyer or law firm may make a factual statement of the accused's name, age, residence, occupation, and family status, and if the accused has not been apprehended, a lawyer associated with the prosecution may release any information necessary to aid apprehension or to warn the public of any dangers the accused may present.

. . .

(f) Any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case.

*Local Rules of the United States District Court for the Southern District of Florida,* Rule 77.2(A).

According to Gonzalez, three statements made at the press conference, held by the United States Attorney and reported in the August 26, 1999, edition of the Miami Herald, constitute "blatant violations" of the foregoing provisions of Rule 77.2.[4]

---

2. Gonzalez is the sole defendant in the above-styled case. A substantial number of cases against other defendants have been filed in this district.

3. The rule, which is entitled "Release of Information in Criminal and Civil Proceedings," is composed of two sections: Section A: "by Attorneys"; and Section B: "by Courthouse Personnel". Only Section A is applicable to the defendant's motion.

4. In his motion and at the hearing, Gonzalez referred to additional statements made earlier that day at a second press conference, and expressed concerns about renewed publicity. According to news reports, fifteen arrests resulting from an additional investigation, dubbed "Operation Ramp Rats II" and "Operation ICON (Internal Conspiracy)", were announced on Wednesday, September 9, 1999. Jay Weaver, *Fifteen Arrested in Second Airport Smuggling Bust,* Miami Herald, Sept.

Preliminarily, the Court notes that one such statement is attributed to Vicent Mazzilli, special agent in charge of the Drug Enforcement Administration's Miami office.[5] By its terms, Rule 77.2(A) applies to lawyers; and the Court declines the defendant's invitation to interpret the rule expansively, to encompass government agencies. Therefore, the Court does not address Mazzilli's statement.

The other two statements cited by Gonzalez are attributed to U.S. Attorney Tom Scott. In his motion, Gonzalez quotes the statements in reverse order from the way in which they appeared in the newspaper article, and truncates portions of them. With regard to one statement, the complete excerpt from the Miami Herald article reads:

> "There are dangerous and intolerable conditions that exist at the airport that could compromise the security of you and your family," U.S. Attorney Tom Scott told reporters Wednesday as he pleaded for what he called "very simple" security reforms.
>
> "Now we pass the buck to you to make that happen."
>
> Scott stopped short of criticizing company or airport management, but made it clear "security measures at the airport are obviously insufficient to do the job."

Kidwell, *supra*, at 1A.[6]

As to the other statement attributed to Scott, the full excerpt reads:

During the two-year federal task force investigation led by the DEA, undercover operatives at the airport set up shop as potential drug smugglers looking for help, then waited. It didn't take long for employees to take them up on it, Scott said. "And they kept on coming."

In 38 separate transactions since September 1997, some 283 kilograms of sham cocaine were smuggled by the employees in backpacks as they bypassed security through their employee access. In some cases, the off-duty employees would use their company benefit of free plane rides-sometimes first class-to smuggle the cocaine to other U.S. cities, authorities say.

"These are individuals who were not even supposed to be working," Scott said. "They walked to the planes. They were never challenged, never stopped and asked what they were doing there. They even used American Airlines [luggage] tugs to move around the airport."

"By the end of this investigation, the agents and I believed we could put anything on those planes we wanted," Scott said.

Kidwell, *supra*, at 1A.[7]

Having examined Scott's statements in context, the Court concludes that they do not violate, "blatantly" or otherwise, the precepts of Rule 77.2(A). Section A(2) of the rule, which pertains to pending investi-

---

10, 1999, at 1A. The contents of those statements are not before the Court. Indeed, counsel for Gonzalez and the government disputed each other's versions of the more recent statements at the hearing. Therefore, the Court declines to consider or address the September 9, 1999, purported statements within the scope of the present motion.

**5.** The statement attributed to Mazzilli is: "These people have sunk to the lowest depths in pursuit of greed. These employees were trusted by the various agencies at MIA and by the public, and they let us all down." Kidwell, *supra*, at 1A.

**6.** Gonzalez cites this statement as: "There are dangerous and intolerable conditions that exist at the airport that could compromise the

security of you and your family ... now we pass the buck to you to make that happen." *See Emergency Motion to Compel Government to Comply with Local Rule 77.2*, at 2. As more fully discussed below, this shortened version of the statement is difficult to decipher. Indeed, it could be characterized as a *non sequitur*.

**7.** Gonzalez cites only the final portion of Scott's statement; i.e ., "By the end of this investigation, the agents and I believed we could put anything on those planes we wanted." *See Emergency Motion to Compel Government to Comply with Local Rule 77.2*, at 2.

gations, clearly permits a prosecutor to make extrajudicial statements designed to warn the public of any dangers.[8] Alternatively, Section A(3), which applies to the period from indictment until trial, permits the issuance of extrajudicial statements designed to aid in the apprehension of an accused or to warn the public of any dangers the accused may present. Once again, the Court notes that at the time of the August 25th press conference not all persons indicted in this investigation had been arrested. Thus, Scott's statements may be reasonably interpreted as an effort to advise the traveling public of safety concerns at Miami International Airport and to warn the public about the dangers posed by the accused who were still at large.

At the hearing, counsel for Gonzalez conceded that such an interpretation was indeed reasonable. Relying on the truncated version of one of the statements— "There are dangerous and intolerable conditions that exist at the airport that could compromise the security of you and your family ... now we pass the buck to you to make that happen"—, counsel posited another meaning; i.e., the people involved in this crime must be punished and it is up to the community, specifically, the potential *venire*, to make that happen. As previously noted, the truncated statement does not make sense. Moreover, the Court finds that Gonzalez's interpretation is difficult to accept, even by his own version of the statement. Gonzalez similarly truncates and disregards the context of Scott's other statement. Citing only the words, "By the end of this investigation, the agents and I believed we could put anything on those planes we wanted," Gonzalez argues that this amounts to an imputation of guilt. Viewed in context, however, the sentence

is the conclusion of an explanation regarding the government's investigation. Rule 77.2(A)(2) allows prosecutors to describe the general scope of an investigation.

Moreover, in his statements, Scott made no specific allusion to Defendant Luis L. Gonzalez, who had been arrested by that time. Therefore, the Court finds no merit in Gonzalez's argument that the statements violated Rule 77.2(A)(3)(f)'s prohibition to the voicing of an opinion as to Gonzalez's guilt or innocence; as to the merits of the case against him; or as to the evidence in his case.[9]

Before closing, the Court must observe that it does not share, at the present time, the defendant's concern that the recent media exposure will taint the potential *venire* for Gonzalez's trial. By the time the case comes up for trial, in several months, it is safe to predict that any effects of the present publicity will have passed, and that the members of the potential *venire* will not recognize Luis L. Gonzalez's name as one of the accused in this investigation. The fact that Gonzalez is the only defendant charged in this action makes the lack of recognition even more probable. In any event, any potential for juror bias as a result of this publicity can be easily remedied through appropriate *voir dire.*

The Court also wishes to note that it does not find it appropriate to issue an order compelling compliance with a local rule, as requested by the defendant. The rule, which has been adopted by this Court, has the full force and effect of an order and violators may be subject to appropriate sanctions. A judge of this Court may, in the course of specific proceedings, remind an attorney of the existence and

---

**8.** At the time of the August 25th press conference, not all of the individuals who had been charged as a result of "Operation Ramp Rat" and "Operation Sky Chef" had been apprehended. Therefore, the government's investigation may be deemed "pending" as of that date.

**9.** Gonzalez's name appears in a boxed portion of the Miami Herald article, along with fifty-

seven other names, under the caption "Charged in Operation Ramp Rat." Kidwell, *supra,* at 1A. As of August 26, 1999, when the article appeared, Gonzalez had made his initial appearance before Magistrate Judge Turnoff. Hence, his arrest and the charges brought against him were then a matter of public record.

provisions of a particular rule, such as Rule 77.2, which is designed to protect the interests of all concerned parties. Such an approach is proper to the orderly management of individual cases. However, issuance of an order compelling compliance with a rule where no violation has been established (and where there is no basis for inferring any deliberate or knowing intent to breach the rule), is more akin to "officiousness".[10] Although the Court does not shirk from the duty of insuring that Gonzalez's interest in a fair trial is protected, the defendant's concerns are premature and the issues he raises would better abide the period immediately preceding trial.

*CONCLUSION*

Based upon the foregoing considerations, it is

ORDERED AND ADJUDGED that Defendant Juan Gonzalez's emergency motion to compel government to comply with Local Rule 77.2 is DENIED.

---

**10.** The Court does not interpret the defendant's motion as an attempt at prior restraint. Rather, the Court accepts it for what it is, an expression of defendant's counsel's zealous representation of a client.